**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| ACE HARDWARE CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| v. | ) | |
| | ) | |
| ROCHESTER ACE HARDWARE, LLC | ) | |
| a Michigan Limited Liability Company | ) | |
| BLOOMFIELD HILLS ACE HARDWARE, | ) | |
| LLC, a Michigan Limited Liability Company | ) | |
| VILLAGE ACE HARDWARE, LLC, | ) | |
| a Michigan Limited Liability Company | ) | |
| ST. CLAIRE SHORES ACE HARDWARE, LLC | ) | |
| a Michigan Limited Liability Company | ) | |
| CLARKSTON ACE HARDWARE, LLC | ) | |
| a Michigan Limited Liability Company | ) | |
| RETAIL DATA MANAGEMENT SERVICES, | ) | |
| INC., a Florida Corporation, | ) | |
| and MARK ELMER, | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

Plaintiff Ace Hardware Corporation ("Ace") states as its Complaint for Injunctive Relief and Damages against Defendants Rochester Ace Hardware ("Rochester"), Bloomfield Hills Ace Hardware, LLC ("Bloomfield"), Village Ace Hardware, LLC ("Village"), St. Claire Shores Ace Hardware, LLC, ("St. Claire"), Clarkston Ace Hardware LLC ("Clarkston"), Retail Data Management ("RDMS"), and Mark Elmer, an individual ("Elmer") collectively hereinafter ("Defendants") as follows:

**INTRODUCTION**

1.      Ace brings this action because the Defendants, former Ace Hardware retailers and their owner, continue to hold themselves out as being affiliated with Ace on the Internet and they have failed to remove Ace signage at two operating locations.  The Defendants are not only

1

prohibited from utilizing Ace's federally registered marks under the Lanham Act, but they also signed contracts that prohibit them from using the Ace name upon termination of their Ace affiliation and that requires them to remove such marks from their operating location. As such, Ace requests injunctive relief and monetary damages.

2.      The Defendants also collectively owe more than $3.5 million to Ace for loans, merchandise, services, credits, and benefits received under the parties' contracts.   Ace seeks to collect this money from the Defendants, including against Defendant Elmer as a personal guarantor who agreed to be personally liable for these obligations.

## PARTIES

3.      Ace is a Delaware corporation with its principal place of business in Oak Brook, Illinois. Ace is a retailer-owned cooperative in the hardware industry, and has more than 3,000 individual retailers who operate more than 4,000 independent Ace stores located in all 50 states and in approximately 70 countries.  Ace is therefore a citizen of Illinois and Delaware.

4.      Defendant Rochester is a Michigan limited liability company.

5.      Defendant Bloomfield is a Michigan limited liability company.

6.      Defendant Village Hardware is a Michigan limited liability company.

7.      Defendant St. Claire Shores is a Michigan limited liability.

8.      Defendant Clarkston is a Michigan limited liability company.

9.      Defendant RDMS is a Florida corporation that has its principal place of business in the state of Florida. RDMS is therefore a citizen of the State of Florida.

10.     Defendant Elmer is an individual who resides in the state of Florida and therefore is a citizen of the State of Florida.

2

## JURISDICTION AND VENUE

11.     This Court has jurisdiction pursuant to Sections 34(a) and 39 of the Lanham Act and also pursuant to 28 USC §§ 1331 and 1338 in that this action involves claims under the laws of the United States, including an act of Congress relating to trademarks.  This Court also has supplemental jurisdiction over the common law claims alleged herein under 28 USC § 1367 (a), as those claims are so closely related to the claims over which this Court has original jurisdiction that they form part of the same case or controversy.

12.     Venue is proper in this District, *inter alia*, pursuant to 28 U.S.C. § 1391, because this case arises out of actions that occurred, at least in substantial part, within this Judicial District.  Furthermore, the agreements at issue in this case were negotiated in substantial part in Illinois and call for the application of Illinois law.

## GENERAL ALLEGATIONS OF FACT

13.     Founded in 1924 by a group of Chicago hardware store owners, Ace operates as a cooperative that purchases merchandise in bulk and allows its individual member-retailers to purchase merchandise in smaller quantities to save money.  This allows its retailers' stores to compete effectively at retail with larger chain stores in their markets.

14.     As a retailer-owned cooperative, Ace is wholly owned by its independently operated retailers.  When retailers affiliate with Ace, they purchase shares of Ace stock which gives them voting rights in the cooperative.

**A.      Facts Relating To Defendants' Intellectual Property Violations:**

15.     Ace spends millions of dollars each year advertising and promoting the Ace brand on behalf of its cooperative members.  Ace has also registered various Ace marks with the

United States Patent and Trademark Office, including as serial numbers 85012032, 1486528, 73323679, and 72228593.

16. The relationship between the parties was also governed, in part, by Ace's standard Ace Brand Agreement. Pursuant to the Ace Brand Agreement, the Defendants agreed that they would cease using the Ace name and related marks upon termination of the Ace Brand Agreement:

**Use of "Ace" Identification to Cease upon Termination of Agreement**

**Upon termination of this Agreement for any reason, [Defendants agree] to discontinue the use of any and all Marks, included but not limited to, the word "ACE" and the use of all trade names, trademarks, service marks, or logos belonging to or registered by the Company (including, but not limited to, to those bearing or suggesting any reference, directly or indirectly, to the Member's former affiliation with the Company) and to remove, at the Member's sole expense, all identification, signs, decals, displays, or other materials used by the Member at the member location which contain any of the foregoing . . .**

(Article III, Paragraph 3; a copy of the executed Ace Brand Agreement is attached hereto as Exhibit 3)(emphasis added).

17. Article III, Paragraph 3, of the Ace Brand Agreement further states:

**Further, if the Member continues, following such termination, to display at or have affixed to the member location any identification, signs, decals, displays or other materials bearing any Marks or other intellectual property of the Company, then the Member agrees to pay to the Company a fee in the amount of Ten Thousand Dollars ($10,000) per month, payable on the first day of each and every month during which any such identification sign continues to be affixed or displayed at the member location for one or more days. Such payments shall continue to accrue and be due and payable until the first day of the month following the month in which all such identification, signs have been permanently removed from the member location.**

4

18.     This photograph, taken in March 2016 after the Defendants' relationship with Ace ended, demonstrates the continued use of the Ace name at the Clarkston location:



19.     Likewise, on the Defendants' Internet site (www.villageacegifts.com) they are continuing to use Ace logos throughout the site.   To begin with, the site's domain address itself improperly uses the name "ace".  Each page of the site references the name of "Village **Ace** Home and Hardware" (Emphasis added)[1] with the following image:



20.     Under the "About Us" section of the Internet site, the Defendants claim that "we not only work to provide every home's hardware needs through **our ACE Hardware brand**, but

---

[1] http://www.villageacegifts.com/Default.aspx

5

also offer much more as well." (Emphasis Added)[2] The Internet site also contains photographs of the Defendants' stores that include Ace's well-know and federally-registered trademarks. For example:



**B.     Facts Relating to The Defendants' Outstanding Debt To Ace:**

21.     As of December 2013, the Defendants owed millions of dollars in debt owed to Ace.

22.     At that time, an in an effort to help the Defendants restructure their financing with a senior lender, Ace agreed to write off $2,886,299.81 of the outstanding debt. However, Ace's willingness to do so was expressly contingent upon the Defendants actually restructuring their debt within a reasonable amount of time. The Parties agreement was memorialized in a December 28, 2013 letter agreement that is attached hereto as Exhibit 7.

23.     The Defendants in fact never restructured their debt as contemplated by Exhibit 7; nor did they do so within a reasonable amount of time.

---

[2] http://www.villageacegifts.com/About.aspx

24.     By letter of October 8, 2015, and because Elmer never restructured his debt, Ace notified Defendant Elmer that the debt was reinstated.  (Exhibit 8)

25.     Since that time, the Defendants have continued to incur more obligations to Ace. A true and accurate copy of the Ace statement showing the current amount of money owed ($3,529,421.38) by Defendants is attached as Exhibit 1.

**COUNT I**
**Breach of The September 25, 2012 Amended and Restated Promissory Note**
**(Against Elmer, RDMS, Rochester, Bloomfield Hills, Village, St. Clair, and Clarkston)**

26.     Ace repeats, re-alleges and incorporates by reference Paragraphs 1-25, as if fully set forth herein.

27.     On or about September 25, 2012, Elmer, RDMS, Rochester, Bloomfield Hills, Village, St. Clair, and Clarkston executed the September 25, 2012 Amended and Restated Promissory Note, a copy of which is attached hereto as Exhibit 9.

28.     The September 25, 2012 Amended and Restated Promissory Note required the repayment of $1.5 million plus interest.

29.     The September 25, 2012 Amended and Restated Promissory Note is a legally binding, valid, and enforceable obligation of Elmer, RDMS, Rochester, Bloomfield Hills, Village, St. Clair, and Clarkston.

30.     Elmer, RDMS, Rochester, Bloomfield Hills, Village, St. Clair, and Clarkston have defaulted under the September 25, 2012 Amended and Restated Promissory Note by failing to repay the Promissory Note and interest as required under its terms.

31.     As a result, Ace has been damaged.

Wherefore, Ace requests judgment in its favor and against Elmer, RDMS, Rochester, Bloomfield Hills, Village, St. Clair, and Clarkston in an amount to be proven at or before trial as owed plus interest, attorneys' fees and costs and all other relief available under the law.

## COUNT II
**Breach of The March 30, 2007 Promissory Note/Equity Match Loan Agreement
(Against RDMS, Rochester, Bloomfield Hills, Village, St. Clair, and Clarkston)**

32. Ace repeats, re-alleges and incorporates by reference Paragraphs 1-31, as if fully set forth herein.

33. On or about March 30, 2007, Retail Data Management Services, Rochester, Bloomfield Hills, Village, St. Clair, and Clarkston executed the March 30, 2007 Promissory Note/Equity Match Loan Agreement, a copy of which is attached hereto as Exhibit 5.

34. The March 30, 2007 Promissory Note/Equity Match Loan Agreement required the repayment of $2 million plus interest.

35. The March 30, 2007 Promissory Note/Equity Match Loan Agreement is a legally binding, valid, and enforceable obligation of Retail Data Management Services, Rochester, Bloomfield Hills, Village, St. Clair, and Clarkston.

36. Retail Data Management Services, Rochester, Bloomfield Hills, Village, St. Clair, and Clarkston are in default under the March 30, 2007 Promissory Note/Equity Match Loan Agreement by failing to repay the principal and interest as required therein.

37. As a result, Ace has been damaged.

Wherefore, Ace requests judgment in its favor and against RDMS, Rochester, Bloomfield Hills, Village, St. Clair, and Clarkston in an amount to be proven at or before trial as owed plus interest, attorneys' fees and costs and all other relief available under the law.

8

## COUNT III
### Breach of the Equity Match Guaranty
### (Against Mark Elmer)

38.     Ace repeats, re-alleges and incorporates by reference Paragraphs 1-37, as if fully set forth herein.

39.     Mark Elmer executed the Mark Elmer Equity Match Guaranty that is attached hereto as Exhibit 4.

40.     Pursuant to the Mark Elmer Equity Match Guaranty, he agreed to guaranty "all liabilities, obligations and indebtedness" owed by RDMS and also those entities that were identified on Schedule A to the Equity Match Guaranty, including Rochester, Bloomfield Hills, Village, St. Clair, and Clarkston.

41.     The Mark Elmer Equity Match Guaranty is a legally binding, valid, and enforceable contract and Ace has performed all of its obligations thereunder.

42.     Elmer has refused to pay his obligations under the Mark Elmer Equity Match Guaranty.

43.     As a result, Ace has been damaged.

Wherefore, Ace requests judgment in its favor and against Mark Elmer in an amount to be proven at or before trial plus interest, attorneys' fees and costs and all other relief available under the law.

## COUNT IV-BREACH OF CONTRACT
### VILLAGE HARDWARE MEMBERSHIP AGREEMENT
### (Against Village)

44.     Ace incorporates by reference and re-alleges paragraphs 1 through 43 as if fully set forth herein.

45.     On or about February 15, 2013, Ace and Village entered into the Ace Hardware Membership Agreement ("Membership Agreement"), a copy of which is attached hereto as Exhibit 3.

46.     The Village Hardware Membership Agreement is a legally binding and enforceable contract.

47.     Ace has performed all of its obligations under the Membership Agreement.

48.     Pursuant to Article II, Section 7 of the Membership Agreement, Village agreed to timely pay Ace for merchandise, supplies and services it ordered as well as for other obligations it owed.

49.     Village has breached the Membership Agreement by not timely paying Ace as required by Article II, Section 7.

50.     Ace has been damaged by Village's breach because it is owed $3,529,421.38 for the reasons detailed on the attached Statement of Account.

Wherefore, Ace requests judgment in its favor and against Village for $3,529,421.38 plus prejudgment interest and for all other relief Ace is entitled to under the law, including an award of its costs and its attorney's fees.

## COUNT V – BREACH OF CONTRACT
## CLARKSTON MEMBERSHIP AGREEMENT
### (Against Clarkston)

51.     Ace incorporates by reference and re-alleges paragraphs 1 through 50 as set forth fully herein.

10

52.     On or about March 21, 2007 Ace and Clarkston entered into an Ace Hardware Membership Agreement ("Clarkston Membership Agreement"), a copy of which is attached hereto as Exhibit 6.

53.     The Clarkston Membership Agreement is a legally binding and enforceable contract.

54.     Ace has performed all of its obligations under the Clarkston Membership Agreement.

55.     Pursuant to Article II, Section 7 of the Clarkston Membership Agreement, Clarkston agreed to timely pay Ace for merchandise, supplies and services it ordered as well as for other obligations it owed.

56.     Clarkston has breached the Clarkston Membership Agreement by not timely paying Ace as required by Article II, Section 7.

57.     Ace has been damaged by Clarkston's breach because it is owed approximately $35,127.66 under the Clarkston's Membership Agreement.

Wherefore, Ace requests judgment in its favor and against Clarkston for $35,127.66 plus prejudgment interest and for all other relief Ace is entitled to under the law, including an award of its costs and its attorney's fees.

## COUNT VI
### Breach of Contract – Ace Brand Agreement
### (Against Clarkston)

58.     Ace repeats, re-alleges and incorporates by reference Paragraphs 1-57, as if fully set forth herein.

59.     Ace entered into an Ace Brand Agreement with the Clarkston that governed, in part, the use of Ace's trademarks and trade names at each of its stores.  A copy of the executed Ace Brand Agreement is attached hereto as Exhibit 6.

60.     The Ace Brand Agreement is a legally binding and enforceable contract.

61.     Under the Ace Brand Agreement, the Clarkston was provided a license to use certain Ace trademarks, but also agreed that it would cease using and would remove all Ace trademarks, service marks, and logos upon termination of the parties' relationship.

62.     Ace has performed all of its obligations under the Ace Brand Agreement.

63.     After Clarkston's Ace membership terminated, it continued to display Ace signage on its property and on Internet advertising.

64.     Pursuant to the Ace Brand Agreement, the Defendant is obligated to pay to Ace the sum of $10,000 per month for Defendant's continued unauthorized use of Ace's trademarks, service marks, and logos after the parties' relationship terminates.

Wherefore, Ace respectfully requests judgment in its favor and against Clarkston and for an award of all relief as to which it is entitled under the law, including a temporary restraining order, preliminary and permanent injunction, an award of monetary damages, and an award of attorneys' fees and costs.

### COUNT VII
### Breach of Contract – Ace Brand Agreement
### (Against Village)

65.     Ace repeats, re-alleges and incorporates by reference Paragraphs 1-64, as if fully set forth herein.

66.     Ace entered into an Ace Brand Agreement with Village that governed, in part, the use of Ace's trademarks and trade names at each of its stores.  A copy of the executed Ace Brand Agreement is attached hereto as Exhibit 10.

67.     The Ace Brand Agreement is a legally binding and enforceable contract.

68.     Under the Ace Brand Agreement, Village was provided a license to use certain Ace trademarks, but also agreed that it would cease using and would remove all Ace trademarks, service marks, and logos upon termination of the parties' relationship.

69.     Ace has performed all of its obligations under the Ace Brand Agreement.

70.     After Village's Ace membership terminated, it failed to remove the Ace's marks and instead just covered them.

71.     Pursuant to the Ace Brand Agreement, the Defendant is obligated to pay to Ace the sum of $10,000 per month for Defendant's continued unauthorized use of Ace's trademarks, service marks, and logos after the parties' relationship terminates.

Wherefore, Ace respectfully requests judgment in its favor and against Village and for an award of all relief as to which it is entitled under the law, including a temporary restraining order, preliminary and permanent injunction, an award of monetary damages, and an award of attorneys' fees and costs.

<u>COUNT VIII</u>
**Lanham Act - Trademark Infringement**
**(Against All Defendants)**

72.     Ace repeats, re-alleges and incorporates by reference Paragraphs 1-71, as if fully set forth herein.

73.     Ace is the owner of the Ace name and trademarks being used by the Defendants as set forth above, including those registered with the United States Patent and Trademark Office.

74.     At all times since the termination of its relationship with Ace, the Defendants have continued to operate as Ace competitors while using Ace's name, brand, and its associated trademarks.

75.     The use by the Defendants of the "Ace" trademark and related name, trademarks, and brand with the continuing promotion and offering of hardware merchandise in the same location as a former Ace Hardware retailer and on the Internet creates a likelihood that a false and unfair association will be made between one of the Defendants' current hardware store and Plaintiff.  The purchasing public is likely to believe that Defendants' services and merchandise are connected with, sponsored, or approved by Ace.

76.     Defendants, by the acts complained of herein, are competing unfairly with Ace, and is otherwise using the reputation and goodwill of Ace to promote, offer, and sell business products and services under Ace's good name and valuable trademarks.

77.     By using Ace's name and trademarks, the Defendants are realizing an unjustified benefit from the general advertising provided by Ace to its truly affiliated member stores.

78.     The Defendants' infringement of Ace's trademarks is being done knowingly, with the intent of causing mistake, or to deceive the public.

79.     As a result, Ace has suffered monetary damage and will continue to suffer irreparable injury in an amount that is not yet determined but that will be proved at trial.

Wherefore, Ace respectfully requests all damages available to it under the law including compensatory damages, attorneys' fees, and prejudgment interest, that the Court treble the actual

14

damages that Ace has sustained and the profits the Defendants have derived as a result of its infringement, for injunctive relief mandating that the Defendants be ordered to remove all Ace signage, trademarks, and service marks from its operating locations and the Internet immediately, for an award of reasonable attorneys' fees and costs, and for such other relief as the Court deems appropriate.

Dated: March 25, 2016            Respectfully submitted,
**ACE HARDWARE CORPORATION**

           By:      /s/ _David Fish___
                One of its Attorneys

David J. Fish
Kimberly Hilton
THE FISH LAW FIRM, P.C.
200 E. 5th Ave., Suite 123
Naperville, Illinois 60563
T: 630-355-7590
F: 630-778-0400